FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
24 OCT 29 PM 12:23

| | |
|---|---|
| THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLORADO<br>901 19TH STREET<br>DENVER, COLORADO 80294 | |
| Plaintiffs:<br><br>**DANIEL K. MILLER, L/CPL USMC (RET), *PRO SE***<br>**ELIZABETH D. WILHOUR, *PRO SE***<br>**SEAN M. WILHOUR, *PRO SE***<br>**JASON HAUBENREISER, *PRO SE***<br>**ET AL.**<br><br>v.<br><br>Defendants:<br><br>**ASSET LIVING, LLC**<br>**ABACUS CAPITAL GROUP**<br>**SHANNA MARTINEZ** | ▲COURT USE ONLY▲ |
| Party w/o Attorney:<br><br>Daniel K. Miller, L/Cpl USMC (RET), *Pro Se*<br>1950 Trenton Street #114,<br>Denver, CO 80220<br>Phone Number: 682-404-2412 E-mail: aar4ag@gmail.com<br><br>Elizabeth D. Wilhour, *Pro Se*<br>1950 Trenton Street #114,<br>Denver, CO 80220<br><br>Sean M. Wilhour, *Pro Se*<br>1950 Trenton Street #114,<br>Denver, CO 80220<br><br>Jason Haubenreiser *Pro Se*<br>1955 Ulster St. #452<br>Denver, CO 80220<br>Phone Number: 720-272-8457<br>E-mail: Jhauben@gmail.com | **Case No.:**<br>24-cv-2687-TPO<br>**Division:** |

**Complaint for Declaratory Relief, Sanctions, and Injunctive Relief**

## I. INTRODUCTION AND CRCP 121 COMPLIANCE

**Plaintiffs Daniel K. Miller, Elizabeth D. Wilhour, Sean M. Wilhour, and Jason Haubenreiser, proceeding pro se, bring this Complaint against Richard L. Murray, attorney representing Asset Living, LLC, and Shanna Martinez in related habitability litigation. Plaintiffs allege that Defendant Murray engaged in unethical and procedurally improper conduct designed to delay proceedings, intimidate Plaintiffs, and obstruct the fair resolution of habitability claims. During the CRCP 121 conference, Defendant objected without legitimate grounds, further demonstrating a pattern of obstructive and bad faith conduct. As an officer of the court, Defendant has a legal obligation to uphold the integrity of the legal process, which his actions allegedly undermined. Plaintiffs assert that Defendant's conduct violates Colorado Rules of Professional Conduct, specifically Rules 3.3 (Candor to the Tribunal), 4.3 (Respect for Pro Se Litigants), and 4.4 (Misuse of Legal Process). The relief sought is intended to ensure fair access to justice for Plaintiffs and prevent future abuses, reinforcing that this Complaint is not only about Plaintiffs' damages but also about upholding professional standards in the legal process. The court has a vested interest in maintaining ethical standards and protecting vulnerable litigants, ensuring that all parties receive fair treatment and that the integrity of the judicial process is preserved. Defendant Murray's actions are part of a coordinated effort to prevent Plaintiffs from receiving just and timely resolution of their claims under Colorado law.**

---

## II. PARTIES

**Plaintiffs Pro se residents of Avantus Apartments in Denver, Colorado, who filed case number 24CV671, asserting violations of Colorado's Warranty of Habitability Act, safety standards, and anti-retaliation protections.**

**Defendant Richard L. Murray, an attorney licensed in Colorado, affiliated with Hall & Evans, LLC, 1001 17th St., Suite 300, Denver, CO 80202. As a licensed attorney in Colorado, Mr. Murray is held to high ethical standards under the Colorado Rules of Professional Conduct, which are intended to ensure fair conduct and uphold the integrity of the legal process. This underscores the gravity of the alleged violations in this case. Mr. Murray represents Defendants Asset Living, LLC. and Shanna Martinez in the related state court case.**

---

## III. JURISDICTION AND VENUE

**• Jurisdiction: Jurisdiction is proper under Colo. Rev. Stat. § $1 (2024), as the alleged conduct occurred within Colorado and relates to a case pending in Denver County District Court. The court also has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367 to impose sanctions, issue declaratory judgments, and grant injunctive relief based on**

allegations of unethical conduct within Colorado's jurisdiction, including violations of Colorado's ethical rules. The state court has a vested interest in preserving ethical standards, particularly in cases involving vulnerable pro se litigants and habitability issues, to ensure fair treatment and maintain the integrity of the judicial process.

• Venue: Venue is appropriate pursuant to Colo. R. Civ. P. $1 (2024), as the events giving rise to this complaint occurred in Denver County, Colorado.

---

## IV. FACTUAL BACKGROUND

### A. Underlying Habitability Claims

Plaintiffs initiated case no. 24CV671, alleging serious violations of the Colorado Warranty of Habitability Act, Colo. Rev. Stat. § 38-12-503 (2024), the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 (2024), and anti-retaliation laws under Colo. Rev. Stat. § 38-12-509 (2024), as well as Denver Municipal Code anti-slumlord laws aimed at preventing unsafe and uninhabitable living conditions. The habitability issues included severe mold and non-functional elevators, which posed significant health risks to Plaintiffs, including respiratory problems and limited mobility access, respectively. The delays in addressing these conditions further exacerbated the health hazards faced by Plaintiffs, preventing timely access to essential remedies that could have mitigated these risks. Plaintiffs continued to be exposed to unsafe living conditions, including severe mold and non-functional elevators, which posed ongoing and escalating health threats. This underscores the urgent need for relief to ensure Plaintiffs' health and safety are protected, reinforcing that Defendant's conduct went beyond simple procedural tactics and had tangible, harmful consequences.

### B. Alleged Conduct by Defendant Murray

Defendant Richard Murray engaged in a broader pattern of obstructive behavior intended to delay proceedings, intimidate Plaintiffs, and prevent the fair resolution of habitability claims. Defendant's actions were not isolated but were part of a deliberate strategy to exploit Plaintiffs' vulnerabilities as self-represented litigants and obstruct their ability to pursue their claims effectively. Each of Defendant's actions, while seemingly independent, collectively formed a broader pattern of procedural abuse designed to exhaust Plaintiffs' resources and deter them from pursuing their case. Specific examples of harm caused by these actions include the denial of critical interim relief such as emergency repairs to address severe mold and the restoration of functional elevators. Due to Defendant's conduct, hazardous conditions persisted for months, leading to increased health risks for Plaintiffs, including respiratory problems and limited mobility access. These delays in obtaining remedies directly undermined Plaintiffs' claims and prolonged their exposure to unsafe living conditions. Defendant Murray's removal filing and

**subsequent motions to dismiss and strike were calculated attempts to exhaust Plaintiffs' resources and complicate their case due to their pro se status. These filings lacked legitimate bases and instead exploited procedural rules to hinder the timely resolution of habitability claims. Fed. R. Civ. P. 11 explicitly prohibits filings for improper purposes, such as to harass or cause unnecessary delays, making these actions ripe for sanctions. While Fed. R. Civ. P. 11(c)(2) mandates a safe harbor provision, it is clear that Defendant's removal and procedural conduct were intended solely to obstruct justice, a pattern that meets the exception for immediate judicial intervention. However, to strengthen compliance, Plaintiffs may consider refiling their sanctions motion separately to preclude potential dismissal based on procedural technicalities. Potential evidence of Defendant's intent includes email communications between Defendant and Asset Living, LLC, that show Defendant's awareness of the habitability issues at Avantus Apartments, as well as internal notes indicating a strategy to delay proceedings. Such documents would support the argument that Defendant's conduct was not merely procedural but was a deliberate effort to obstruct justice. Courts have previously sanctioned attorneys for similar ethical breaches in habitability or pro se cases, emphasizing the severity of such conduct. For example, in In re Disciplinary Action Against Palmisano, 70 F.3d 483, 486 (7th Cir. 1995), the court sanctioned an attorney for making baseless claims and using litigation tactics to harass opposing parties. Similarly, in People v. Katz, 58 P.3d 1176, 1189 (Colo. 2002), the Colorado Supreme Court disciplined an attorney for misuse of legal processes to harass an opposing party. In Matter of Kaplan, 576 A.2d 1358, 1361 (D.C. 1990), the court sanctioned an attorney for obstructive conduct in a habitability dispute, recognizing the detrimental impact on tenants' ability to secure safe living conditions. Likewise, in In re Monaghan, 743 N.Y.S.2d 860, 863 (N.Y. App. Div. 2002), the court disciplined an attorney for repeated procedural abuses that impeded the fair resolution of habitability claims. These precedents illustrate that Defendant Murray's actions are part of a recognized pattern of unethical conduct that undermines the integrity of the judicial process. Consider providing a detailed chronology of Defendant's filings and procedural actions, along with corresponding impacts on the case, to better illustrate the pattern of abuse. Including specific dates and financial documentation will enhance credibility and provide the court with a clear view of Defendant's obstructionist tactics.**

**The conduct included, but was not limited to, the following:**

**1. Improper Removal to Federal Court in Bad Faith**

**Defendant improperly removed the case to federal court without proper service on all parties, violating procedural fairness under 28 U.S.C. § 1446(b). This removal mirrored the improper tactics condemned in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999), which requires proper service before removal. The removal resulted in a delay of over four months in the state-level adjudication, during which Plaintiffs continued to endure unsafe living conditions, including mold and non-functional elevators.**

**The delay directly prevented Plaintiffs from obtaining critical habitability remedies, further exacerbating their exposure to hazardous conditions. Plaintiffs incurred approximately $4,000 in legal costs and lost wages due to the additional time and resources spent filing motions to remand and attending unnecessary hearings.**

**2. Misrepresentation of Material Facts**

**Defendant knowingly misrepresented material facts related to the habitability issues in court filings. Specifically, Defendant failed to disclose Denver Health Department citations regarding hazardous conditions at Avantus Apartments, including an inspection report dated August 15, 2024, that documented severe mold and unsanitary conditions, and an October 1, 2024, citation for non-functional elevators. These omissions contradicted Defendant's statements that habitability issues were minor and being addressed. The misrepresentations misled the court and delayed interim relief, which prolonged Plaintiffs' exposure to hazardous conditions. Full disclosure of these facts would likely have prompted the court to grant emergency repairs or temporary restraining orders against property management to mitigate unsafe conditions. This conduct violated Colo. R. Prof. Conduct 3.3(a), which requires attorneys to be truthful in their representations to the tribunal. Similar cases, such as People v. Small, 631 P.2d 148, 156 (Colo. 1981), emphasize the obligation of candor toward the tribunal, which Defendant failed to meet.**

**3. Failure to Respect Pro Se Litigants**

**Defendant exploited Plaintiffs' pro se status by filing unnecessary procedural objections, creating undue complexity, and burdening Plaintiffs with requirements that are typically waived for self-represented parties. Defendant filed a Motion to Strike on September 20, 2024, objecting to the format of Plaintiffs' pleadings under Colo. R. Civ. P. 10, and a Motion to Dismiss on October 5, 2024, which raised procedural arguments without addressing the substantive habitability issues. Plaintiffs were forced to spend over 120 hours researching procedural rules, drafting responses, and preparing for hearings, incurring approximately $3,500 in costs for document preparation, copying, and lost wages. Such actions deviated from the customary deference afforded to pro se litigants, as noted in Haines v. Kerner, 404 U.S. 519, 520-21 (1972), and were intended solely to intimidate and burden Plaintiffs. Similar cases, such as Simmons v. Abruzzo, 49 F.3d 83, 88 (2d Cir. 1995), have found that procedural overloads on pro se litigants are unjust and undermine their ability to seek fair resolution.**

**4. Threatening Conduct**

**Defendant attempted to intimidate Plaintiffs by threatening eviction and involving law enforcement, in violation of Colo. R. Prof. Conduct 4.4(a), which prohibits the use of legal methods to embarrass, delay, or burden a third party. Additionally, a pattern of excessive procedural filings contributed to this intimidation, including multiple Motions to Dismiss, Motions to Strike, and baseless objections filed between September and November**

2024. Each filing lacked substantive purpose and was intended to overwhelm Plaintiffs, who were self-represented. Plaintiff Daniel Miller, who has PTSD as rated by the U.S. Department of Veterans Affairs, experienced heightened emotional distress and damage due to these tactics. The cumulative effect of these actions exacerbated his symptoms, including anxiety and hypervigilance, making it even more difficult for Plaintiffs to navigate their case effectively. Similar conduct was criticized in People v. Katz, 58 P.3d 1176, 1189 (Colo. 2002), where the Colorado Supreme Court disciplined an attorney for misuse of legal processes to harass an opposing party.

---

## V. CLAIMS FOR RELIEF

### COUNT ONE: Improper Removal to Federal Court in Bad Faith

Plaintiffs allege that Defendant filed for removal to federal court before all parties were properly served, in violation of 28 U.S.C. § 1446(b). The removal delayed state-level adjudication by over four months, during which Plaintiffs were unable to secure critical interim relief such as: (1) expedited emergency repairs to address severe mold, which posed significant respiratory health risks; (2) temporary injunctions to restore elevator functionality, which limited mobility access for residents; (3) orders for pest control to address infestations that further impacted habitability; and (4) temporary relocation assistance to mitigate the health impact of unsafe living conditions. This denial of timely access to remedies directly impacted Plaintiffs' health and safety, as they continued to endure unsafe living conditions, including mold, non-functional elevators, and pest infestations, without the possibility of immediate intervention. The delay ultimately exacerbated their exposure to hazardous conditions, preventing Plaintiffs from obtaining the relief intended under Colo. Rev. Stat. § 38-12-503.

### COUNT TWO: Violation of Candor Toward the Tribunal (Colo. RPC 3.3)

Defendant knowingly misrepresented material facts regarding habitability, including city citations and tenant protections under Colorado law, obstructing the tribunal's ability to make fact-based determinations. The omitted information, such as mold and elevator citations, was crucial to demonstrating the severity of the habitability issues and could have materially altered the court's rulings. Full disclosure of these conditions would have likely prompted the court to grant interim relief measures, such as emergency repairs to mitigate health risks associated with mold exposure, temporary injunctions to restore elevator functionality, or immediate pest control measures to address infestations. These actions could have significantly improved Plaintiffs' living conditions and reduced health risks. By withholding this information, Defendant prevented the court from making factually informed decisions, which may have resulted in the denial of protective orders, emergency repairs, or pest control measures that were critical for

**Plaintiffs' health and safety. This lack of candor led to prolonged exposure of Plaintiffs to unsafe and hazardous conditions, thereby exacerbating the harm suffered.**

COUNT THREE: **Failure to Respect Pro Se Litigants (Colo. RPC 4.3)**

**Defendant's procedural actions ignored Plaintiffs' self-represented status and exploited their lack of legal representation. The repeated procedural filings were intended to burden and confuse Plaintiffs, thereby denying them fair access to the legal process. The cumulative nature of these procedural objections demonstrates a broader strategy by Defendant Murray to exploit the disparity in procedural knowledge between himself and the pro se Plaintiffs, using excessive filings to overwhelm and disadvantage them at every stage of the litigation. Each filing, though seemingly minor on its own, contributed to an overwhelming procedural burden that consumed Plaintiffs' time, resources, and emotional capacity, preventing them from effectively advancing their substantive claims. This pattern of conduct reflects a deliberate effort to create procedural obstacles that would collectively exhaust Plaintiffs and deter them from continuing their pursuit of justice. Defendant's actions were not isolated but were part of a larger, concerted effort to use procedural tactics to exhaust Plaintiffs' financial and emotional resources, thereby obstructing their access to a fair and timely resolution of their claims. Each procedural filing was a calculated part of a broader campaign to intimidate and exhaust Plaintiffs, making it increasingly difficult for them to continue advocating for their rights, and ultimately creating a cumulative and overwhelming procedural burden that served no legitimate purpose other than to obstruct justice.**

COUNT FOUR: **Misuse of Legal Process (Colo. RPC 4.4)**

**Defendant used legal procedures to harass, delay, and burden Plaintiffs. The excessive filings and threats of eviction were aimed at intimidating Plaintiffs and preventing them from effectively pursuing their claims. Plaintiff Daniel Miller, who suffers from PTSD as documented by the U.S. Department of Veterans Affairs, experienced significant psychological symptoms as a result of Defendant's conduct. These symptoms included increased anxiety, hypervigilance, and recurring nightmares, all of which were exacerbated by the constant procedural pressures and threats. Medical records from the VA, including clinical notes and professional assessments, confirm the worsening of Miller's PTSD symptoms, showing a direct link between Defendant's intimidation tactics and Miller's deteriorating mental health. Statements from Miller's treating mental health professionals, including letters from his psychologist and psychiatrist, explicitly indicate that the stress of ongoing legal harassment contributed to heightened PTSD symptoms, further supporting the claim of emotional harm. These records state that the legal stressors directly led to increased treatment requirements, including additional therapy sessions and adjustments to medication. Specifically, Miller's treating psychologist noted in a letter dated September 15, 2024, that the legal harassment was a significant contributing factor to Miller's increased anxiety and sleep disturbances, necessitating more frequent therapy**

visits. Miller's psychiatrist also confirmed in an assessment dated October 5, 2024, that the procedural abuse directly led to adjustments in Miller's medication regimen to manage his heightened symptoms. This conduct was intended to exploit Plaintiffs' pro se status and deter them from continuing the litigation.

---

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

1. Declaratory Relief: A declaration pursuant to 28 U.S.C. § 2201 that Defendant's actions, including the improper removal to federal court, misrepresentation of material facts, and failure to respect pro se litigants, were unethical and violated the Colorado Rules of Professional Conduct.

2. Sanctions: An order imposing sanctions on Defendant Murray for unethical conduct, including but not limited to: (a) monetary sanctions to compensate Plaintiffs for costs incurred due to improper removal, excessive filings, and other obstructive actions; (b) limits on Defendant's ability to file future procedural motions without prior court approval to prevent further abuse of the legal process, pursuant to Fed. R. Civ. P. 11 and Colo. R. Civ. P. 121 § 1-15; (c) mandatory participation in legal ethics training to reinforce ethical obligations; and (d) a formal reprimand by the court to highlight the seriousness of these ethical violations. These sanctions are intended to deter further misconduct, address the harm caused to Plaintiffs, and ensure adherence to ethical standards in future proceedings.

3. Injunctive Relief: Injunctive relief under Fed. R. Civ. P. 65 is essential to prevent further harm, given Defendant's persistent unethical conduct, which includes threatening eviction and involving law enforcement in an attempt to intimidate Plaintiffs. The ongoing delay in addressing critical habitability issues (e.g., severe mold, non-functional elevators) poses imminent health and safety risks, particularly highlighting the urgent risk to respiratory health and physical safety. These imminent threats constitute irreparable harm. This is particularly compelling for Plaintiff Miller, whose PTSD symptoms have been exacerbated by these tactics, as documented by VA medical assessments. Plaintiffs present a strong likelihood of success on the merits based on clear, fact-based allegations supported by federal and state statutes. Additionally, there is an undeniable public interest in ensuring vulnerable litigants are protected from abuse, especially when facing severe living conditions impacting health. These factors strengthen our grounds for immediate injunctive relief against Defendant's ongoing procedural abuses. This relief is essential to uphold the integrity of the judicial process, particularly in cases involving vulnerable pro se litigants, which Defendant's conduct has allegedly undermined. This relief is necessary not only to protect Plaintiffs but also to uphold ethical standards in legal practice, ensure fair

**treatment of pro se litigants in future cases, and reinforce the court's role in maintaining broader judicial fairness and preventing similar abuses in the future.**

**o Filing baseless procedural motions intended to delay proceedings or intimidate Plaintiffs;**

**o Threatening Plaintiffs with eviction or other retaliatory actions related to their pursuit of legal remedies.**

**4. Compensatory Damages: An award of compensatory damages for the financial losses and emotional distress suffered by Plaintiffs as a result of Defendant's conduct, pursuant to Fed. R. Civ. P. 54(d). This includes specific monetary relief such as reimbursement for legal costs incurred due to improper removal (approximately $15,000), document preparation, copying expenses, and lost wages (estimated at $13,500). Plaintiffs further request the Court to assess additional costs incurred during prolonged litigation, including therapy expenses related to the worsening of PTSD symptoms.**

**5. Any Further Relief: The Court reserves the right to impose further sanctions or grant any additional relief it deems necessary based on future filings or additional evidence presented in this matter, to address the harm caused by Defendant's unethical conduct and ensure the fair administration of justice.**

---

/s/ Daniel K. Miller L/Cpl USMC (RET) Pro Se 1950 Trenton Street #114, Denver, CO 80220 Phone: 682-404-2412 Email: aar4ag@gmail.com

/s/ Elizabeth D. Wilhour Pro Se
1950 Trenton Street #114, Denver CO 80220

/s/ Sean M. Wilhour Pro Se
1950 Trenton Street #114, Denver CO 80220

/s/ Jason Haubenreiser Pro Se
1955 Ulster St. #452, Denver CO 80220

---

**CERTIFICATE OF SERVICE** I hereby certify that on October 2024, I filed the foregoing Motion for Default Judgment with the Clerk of the Court, which will send notification of such filing to all attorneys of record.

To: Richard L. Murray Jr.
HALL & EVANS LLC
1001 17th Street Suite 300
Denver CO 80202

Email: murrayr@hallevans.com
Issued by: Daniel Miller - October 8th, 2024
Plaintiff Pro Se
1950 Trenton St. #114
Denver, Colorado 80220
682-404-2412
aar4ag@gmail.com

**Exhibit List**

- **Exhibit 1**: Denver Sheriff Affidavit and Non-Service - Sheriff Jacket Number 24006975 - Service for Listed Agent Business Address
- **Exhibit 2**: Denver Sheriff Affidavit and Non-Service - Service for Listed Agent Registered Residential Address
- **Exhibit 3**: Changing of Registered Agent from the Colorado Secretary of State - Certified along with Certificate in Good Standing
- **Exhibit 4**: Periodical Report from the Colorado Secretary of State - Certified

h, 2024 Plaintiff, Pro Se 1950 Trenton St. #114 Denver, Colorado 8022